Francisco **AGUILERA–FLORES**, Plaintiff,

v.

Herman R. **LANDON**, District Director of Immigration and Naturalization, Department of Justice, District No. 16, Defendant.

No. 16587.

United States District Court, S. D. California, Central Division.

Sept. 22, 1954.

Harry Wolpin, Los Angeles, Cal., for plaintiff.

Laughlin E. Waters, U. S. Atty., Max F. Deutz, Asst. U. S. Atty., Chief Civil Division, James R. Dooley, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

BYRNE, District Judge.

Flores seeks judicial review of an outstanding deportation order. He alleges that he now is and for more than thirty-four years last past has been a lawful resident of the United States, having been legally admitted for permanent residence in 1918; that on or about the 17th day of June, 1953, the defendant

issued an order of deportation directing that he (Flores) be deported from the United States to Mexico on the ground that he became a member of the Communist Party after entry into the United States; that upon appeal to the Board of Immigration Appeals, the Board dismissed the appeal and he has exhausted his administrative remedies. He further alleges that he has never been and is not now a member of the Communist Party; that no evidence of such membership was produced at the administrative hearings; that he is about to be taken into custody and deported by the defendant; that the deportation order is not supported by substantial evidence and is invalid because of lack of due process in the administrative proceedings.

The defendant moved to dismiss on the grounds (1) lack of jurisdiction over the subject matter; (2) failure to state a claim upon which relief can be granted; (3) failure to join an indispensable party.

■ The defendant's objection to the jurisdiction of the court in this proceeding under the immigration laws is best answered in the words of Mr. Justice Jackson speaking for the court in Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 1950, 341 U.S. 246, 71 S.Ct. 692, 694, 95 L.Ed. 912, "Petitioner asserted a cause of action under the Power Act [16 U.S.C.A. § 791a et seq.]. To determine whether that claim is well founded, the District Court must take jurisdiction, whether its ultimate resolution is to be in the affirmative or the negative. If the complaint raises a federal question, *the mere claim confers power to decide* that it has no merit, as well as to decide that it has." (Emphasis supplied.) And see Bell v. Hood, 1945, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939. Assuming that the defendant is correct in his contention that a deportation order cannot

be challenged in the courts except in a habeas corpus proceeding, that determination must be made after and not before the court has assumed jurisdiction over the controversy. If the court determines that deportation orders remain immune to direct attack, then the allegations in the complaint do not state a claim upon which relief can be granted, and the dismissal would be on that ground, not for want of jurisdiction.[1]

The Supreme Court in Heikkila v. Barber, 345 U.S. 229, 73 S.Ct. 603, 97 L. Ed. 972, held that Section 19(a) of the 1917 Immigration Act, 39 Stat. 889 had the effect of precluding judicial attack on deportation orders except in habeas corpus proceedings. There has been a change in the statutes. It is not disputed that the 1952 Act, 66 Stat. 163, 8 U.S.C.A. § 1101 et seq., and not the 1917 Act, governs this case.

The question whether or not the 1952 Act provides an alternative method for testing the validity of a deportation order has not as yet been passed upon by the Ninth Circuit. The Court of Appeals for the District of Columbia considered at length the historical background and legislative history of the 1952 Act, and in a well reasoned opinion held that, unlike the 1917 Act, the 1952 Act provides for judicial review under Section 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009. Rubinstein v. Brownell, 1953, 92 U.S.App.D.C. 328, 206 F. 2d 449, affirmed sub.nom. Brownell v. Rubinstein, 1954, 346 U.S. 929, 74 S.Ct. 319. The Second Circuit followed the Rubinstein case in Pedreiro v. Shaughnessy, 1954, 213 F.2d 768. The First Circuit took the contrary position. Batista v. Nicolls, 1954, 213 F.2d 20.

■ I agree with the holding in Rubinstein that Congress, in enacting the 1952 Act, intended that deportation orders be reviewable under Section 10 of the Administrative Procedure Act.

1. In Heikkila v. Barber, 1953, 345 U.S. 229, 73 S.Ct. 603, 607, 97 L.Ed. 972, relied upon by the defendant, the Supreme Court *did not hold that the District Court* *was without jurisdiction.* On the contrary, it affirmed the judgment of dismissal on "this procedural ground".

With respect to the issue of failure to join an indispensable party, this court has ruled adversely to the contention of the defendant in Navarro v. Landon, D.C.1952, 106 F.Supp. 73. The defendant refers to the Navarro case, but states, "this issue is being raised because it is felt that * * * there is a conflict within this district on the question of indispensable parties, and the Ninth Circuit Court of Appeals has not yet resolved the conflict". That is a correct statement. Following the Navarro decision, the case of Corona v. Landon, D.C., 111 F.Supp. 191, was decided by another judge of this district holding that the Commissioner of Immigration is an indispensable party in a proceeding to test the validity of a deportation order.[2] With due respect to my eminent associate, I must adhere to my ruling in Navarro, although conceding that there is no dearth of opinion to the contrary.[3]

In the resolution of the indispensable party issue, Williams v. Fanning, 332 U.S. 490, 68 S.Ct. 188, 189, 92 L.Ed. 95, is controlling. The test there laid down by the Supreme Court is, "the superior officer is an indispensable party if the decree granting the relief sought will require him to take action, either by exercising * * * a power lodged in him or by having a subordinate exercise it for him." On the other hand, the superior is not an indispensable party "if the decree which is entered will effectively grant the relief desired by expending itself on the subordinate official who is before the court", and it is immaterial that the subordinate "would be left under a command of his superior to do what the court has forbidden."

Applying the test here, we find that the relief sought by Flores is to restrain the defendant from deporting him under the asserted authority of an alleged il-legal deportation order. If the court finds that Flores is not deportable the decree will order the defendant to desist in his efforts to deport him, and the matter will be at an end. Such a decree, in expending itself on the district director, who is the only defendant before the court, will effectively grant Flores the relief he is seeking without requiring the defendant's superior to do a single thing. It is immaterial that the district director "would be left under a command of his superior to do what the court has forbidden."

While the Ninth Circuit has not had occasion to pass on this issue as it relates to deportation orders, it has applied the Williams v. Fanning test of indispensable parties in other situations. In the recent case of Stanford v. Lunde Arms Corp., 9 Cir., 1954, 211 F.2d 464, the court held that the Postmaster General is not an indispensable party to an action to restrain a local postmaster from carrying out an order of the Postmaster General. In Koepke v. Fontecchio, 9 Cir., 177 F.2d 125, where the superior was not required to take action, he was not an indispensable party. Where the relief sought required the Secretary of the Navy "to take action * * * by exercising directly a power lodged in him", he was an indispensable party. Daggs v. Klein, 9 Cir., 169 F.2d 174, 176.

In Corona v. Landon, supra, [111 F. Supp. 194] the court thought "if we apply to these proceedings, indiscriminately, the ruling of the Supreme Court in Williams v. Fanning, * * * we will find ourselves reviewing, as the plaintiff here seeks to have us review, all the actions of the Commissioner in a proceeding to which he was not a party." *That was exactly the situation in Williams v. Fanning.* The order involved was that of the superior, but the Supreme Court held that the superior was not an indis-

---

**2.** All reference to Navarro v. Landon has been omitted from the published opinion of Corona v. Landon, although it was referred to in the original opinion as filed, as well as in the copy released to the newspapers.

**3.** Corona v. Landon, supra, followed the Third Circuit case of Paolo v. Garfinkel, 200 F.2d 280, and Birns v. Commissioner of Immigration, D.C.N.D.Ohio, E.D.1952, 103 F.Supp. 180.

pensable party and that it was immaterial that the defendant "would be left under a command of his superior to do what the court has forbidden." To the same effect see Stanford v. Lunde Arms Corp., supra.

The rationale of the cases holding the superior to be an indispensable party seems to be that the plaintiff might move to another district and the injunction granted would not bar deportation from such other district. The latest pronouncement on this issue was in Pedreiro v. Shaughnessy, supra, where the Second Circuit thought the contentions with respect to the possibility that the alien might move to another district "lack substance".

The defendant argues, "If such relief were granted an anomoly would result in which a deportation order would be invalid in one district and valid in all others." The defendant is under a misapprehension. If a district court held a deportation order invalid, it would remain invalid until a higher court ruled to the contrary. *It is the injunctive relief which expends itself on the official who is before the court.* If the alien moved to another district, the director in such district would not be amenable to the order made by the court enjoining the defendants before it from deporting the alien. However, any effort to deport the alien on the judicially declared invalid order could be enjoined by the district court exercising jurisdiction over the person of the threatening director.

Of course this entire argument assumes that if the immigration authorities are dissatisfied with the court's decision they will attempt to circumvent it by waiting for the alien to move into another district rather than proceeding in an orderly manner to have the decree tested in the appellate courts. A similar argument was made in Stanford v. Lunde Arms Corp., supra [211 F.2d 465], and was met with the logic of Judge Healy's statement, "We are not disposed to assume, as appellant suggests may be the case, that the postmasters elsewhere will ignore the court's decision * * *."

The applicable test of the Fanning case is whether "the decree which is entered will effectively grant the relief desired by expending itself on the subordinate official who is before the court." "The relief desired" can only mean the relief desired by the plaintiff who is the only one seeking relief. Here we have a plaintiff 65 years of age employed as a gardener, a resident of the district for 36 years, with a wife and five children born in the district. The relief he desires is to restrain this defendant, who threatens to deport him on an alleged invalid deportation order. He is not interested in restraining directors in districts to which he has no intention of moving. He should not be denied the relief he desires solely on the ground that the court believes additional relief would be more desirable.

The defendant feels that Rodriguez v. Landon, 9 Cir., 1954, 212 F.2d 508, supports his position. In that case, however, the action was brought to review an order *denying an application for suspension of deportation.* Section 244(a) of the 1952 Act, 8 U.S.C.A. § 1254(a), vests in the Attorney General the discretionary power to suspend deportation. Section 19(c) of the 1917 Act included similar provisions, 8 U.S.C.A. § 155(c). The relief sought in the Rodriguez case was to require the Attorney General to exercise his discretion. Under the Fanning case test that "the superior officer is an indispensable party if the decree granting the relief sought will require him to take action," the Attorney General is an indispensable party where the relief sought is to require him to exercise his discretion. Chavez v. McGranery, 8 Cir., 108 F.Supp. 255.

A comparison of the instant case with Laureano-Gonzalez v. Main, D.C., 125 F.Supp. 60, decided by this court on Sept. 22, 1954, emphasizes the distinction between deportation cases where the superior officer is and is not an indispensable party within the rule of Williams v. Fanning, supra.

The plaintiff's first amended complaint does not include a prayer for a prelimi-

**60**

nary injunction to prevent the defendant from taking him into custody; however, he prays for a permanent injunction upon the final determination of deportability and he obtained a temporary restraining order from a judge of this court when the original complaint was filed. Both parties apparently regard the matter of the issuance of a preliminary injunction as properly before the court and I shall so consider it.

■ Section 242(a) of the 1952 Act, 8 U.S.C.A. § 1252(a), authorizes the Attorney General to keep an alien in custody, release him on bond, or release him on conditional parole. These arrest provisions are applicable to the interval between the final administrative deportation order and the final order of the court, as well as to the period prior to administrative determination of deportability. Rubinstein v. Brownell, supra. The discretion exercised by the Attorney General must be a reasonable discretion, not an arbitrary and capricious one. Carlson v. Landon, 342 U.S. 524, 72 S. Ct. 525, 96 L.Ed. 547.

To grant a preliminary injunction preventing the plaintiff from being taken into custody before the Attorney General has exercised his discretion in that respect would be to preclude the Attorney General from exercising the authority granted him by Congress. The courts may not interfere unless there is an abuse of discretion. Obviously there can be no abuse of discretion until there has been an exercise of discretion. The courts must assume that the Attorney General and his subalterns will not abuse the discretion residing in them, and that when an alien challenges a deportation order in the courts they will not proceed to take him into custody unless they believe that a real need exists for such action.

There is nothing before the court to indicate that the defendant, pending review, intends to incarcerate this 65 year old gardener who has resided in the district for 36 years with his wife and children, nor that he intends to require excessive bail.

If the defendant in the exercise of his authority to control and supervise an alien who has been ordered deported, abuses the discretion vested in him, there will be ample opportunity to apply to the court for relief.

■ The motion to dismiss is denied. The application for a preliminary injunction is denied and the temporary restraining order referred to above is dissolved.

Counsel for defendant is requested to prepare, serve, and lodge a formal order for settlement in accordance with local rule 7. The findings of fact and conclusions of law stated in this memorandum shall serve as the findings and conclusions required on a ruling refusing an interlocutory injunction under Rule 52, Fed.Rules Civ.Proc. 28 U.S.C.A.