**GENERAL INSTRUMENT CORPORA-
TION, Petitioner,**

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

No. 8869.

United States Court of Appeals
Fourth Circuit.

Argued April 4, 1963.

Decided June 3, 1963.

Jesse Freidin, New York City (Herbert Prashker, Eric Rosenfeld, and Poletti, Freidin, Prashker & Harnett, New York City, on brief), for petitioner.

Warren M. Davison, Atty., National Labor Relations Board (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and William J. Avrutis, Atty., National Labor Relations Board, on brief), for respondent.

Donald Grody, New York City (Abramson & Lewis, New York City, on brief), for International Union of Electrical, Radio and Machine Workers, AFL–CIO, amicus curiae.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and J. SPENCER BELL, Circuit Judges.

### J. SPENCER BELL, Circuit Judge.

Pursuant to National Labor Relations Act § 10(f), 29 U.S.C.A. § 160(f), General Instrument Corporation, the employer, brings action in this Court seeking to set aside a decision and order of the National Labor Relations Board. The Board cross-petitions pursuant to National Labor Relations Act § 10(e), 29 U.S.C.A. § 160(e), for enforcement of the order. The union involved is the International Union of Electrical, Radio and Machine Workers, AFL–CIO. The order involved requires the employer to bargain collectively with the union as certified representative of the employees, to cease and desist from violating National Labor Relations Act § 8(a) (1) and (5), 29 U.S.C.A. § 158(a) (1) and (5), and to post appropriate notices.

General Instrument Corporation has several plants, including four within the area encompassed by this Circuit. Involved in this petition is the employer's Thermo-Electric Division at its Newark, New Jersey, plant. The Thermo-Electric Division is devoted to research and development and at the time of the Regional Director's hearing, contained 32 employees, 17 of whom were classified as engineers and 15 of whom were in laboratory classifications. The evidence indicates that the laboratory and the engineering employees work very closely with each other, frequently performing overlapping functions. However, the evidence also indicates that there are several areas in which the groups do not share common interests. The engineers are professionals, whereas the laboratory workers are not; the engineers are generally paid on a salary basis ranging up to $300.00 per week, whereas the laboratory technicians are paid on an hourly basis with rates running up to $3.10 per hour; in general, the engineers are not paid for overtime hours, whereas the laboratory technicians are so paid; most of the engineers have college degrees or the equivalent, or are in the process of obtaining one, whereas none of the laboratory workers have this qualification.

After a hearing, the Regional Director found that a unit of all professional and technical employees would be appropriate, but if the professional employees were to vote under National Labor Relations Act § 9(b) (1), 29 U.S.C.A. § 159

(b) (1), against inclusion, a unit of laboratory technicians would be appropriate. The Board, reversing the Regional Director, found a unit of laboratory technicians to be appropriate and, therefore, limited the voting count to the ballots cast by these employees. On this basis, a majority of the employees in the unit voted for unionization.

In its analysis of the issues, the Board stated that:

"it is clear that the Petitioner [the union] seeks to represent only the technical employees and does not desire to represent the professionals. Moreover, where as here, the petitioner has no showing of interest among the professional employees, the Board will not direct an election among them to ascertain whether they wish to be joined in the same unit with the nonprofessionals [citing cases in a footnote]. In these circumstances, we find that the requested unit limited to the technical employees is appropriate. * * * "

The employer filed a motion before the Board for reconsideration of the decision, asserting that the Board had allowed the union, by its showing of interest, to determine the appropriateness of the unit. In denying this motion, the Board stated that it

"is of the opinion that the Employer's motion to reconsider should be denied as lacking in merit because the unit of technical employees in the Employer's Thermo-Electric Division, excluding the professional employees, is appropriate for the purposes of collective bargaining."

The employer contends that the decision of the Board should be set aside, since 1) the Board violated N.L.R.A. § 9(c) (5), 29 U.S.C.A. § 159(c) (5), in that it gave controlling effect to the extent of organization of the employees, 2) the Board failed to perform its duty as imposed by N.L.R.A. § 9(b), 29 U.S. C.A. § 159(b), to "decide in each case" what the appropriate unit should be, and 3) the Board's unit determination is ar-

bitrary, capricious and an abuse of discretion in violation of Administrative Procedure Act § 10(e) (B) (1), 5 U.S. C.A. § 1009(e) (B) (1).

■ Primary responsibility for deciding whether a unit is appropriate for purposes of collective bargaining has been granted to the National Labor Relations Board. N.L.R.A. § 9(b), 29 U.S. C.A. § 159(b). Our scope of review of this decision is very limited. N. L. R. B. v. Quaker City Life Insurance Co., 319 F.2d 690 (4 Cir. 1963). Misapplication of law, failure of substantial evidence, abuse of discretion—these are the elements upon which a court may rely in reviewing the Board's decision. National Labor Relations Act § 10(e) & (f), 29 U.S.C.A. § 160(e) & (f); Administrative Procedures Act § 10(e), 5 U.S.C.A. § 1009(e); N. L. R. B. v. Jones & Laughlin Steel Corp., 331 U.S. 416, 67 S.Ct. 1274, 91 L.Ed. 1575 (1947); Packard Motor Car Co. v. N. L. R. B., 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040 (1947); Pittsburgh Plate Glass Co. v. N. L. R. B., 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251 (1941); N. L. R. B. v. Quaker City Life Insurance Co., supra. Absent these, the administrative determination must be supported.

■ A sufficient basis in substantial evidence on the record as a whole exists to sustain the order presently under attack. The technicals are sufficiently cohesive as a unit and at the same time sufficiently distinct from the professional engineers to permit separate bargaining units. Working conditions, hourly wage scales, job specifications, and advancement opportunities indicate that the technicals have a strong common bond; different levels of education, job specifications, wage basis, advancement opportunities and, significantly, professional status, support a finding that sufficient distinctions between the technicals and the professionals exist to support a separation.

■ This is not to say that a different result would have been incorrect. A unit combining technicals and profes-

sionals might also have been proper. However, where, as often occurs, more than one unit might properly be found appropriate, the Board has the responsibility of making the determination. N. L. R. B. v. Quaker City Life Insurance Co., supra.

■ The employer bases its main attack on a claim that the Board, although it may have come to a conclusion that is supportable on the record, applied inappropriate standards in reaching the result. Were this the case, the Board's decision could not be enforced. N. L. R. B. v. Quaker City Life Insurance Co., supra; N. L. R. B. v. Glen Raven Knitting Mills, Inc., 235 F.2d 413 (4 Cir. 1956).

■ In reversing the decision of the Regional Director, the Board indicated that it was giving consideration to the union's unwillingness to represent the professionals and to the fact that there was no "showing of interest" among the professionals for representation by the union. It is claimed that in so doing the Board violated § 9(c) (5) of the Act, 29 U.S.C.A. § 159(c) (5), by giving controlling effect to the extent to which the employees had organized. If it were true that these reasons were the sole basis for the Board's decision, a serious question as to the validity of the Board's order would result. N. L. R. B. v. Glen Raven Knitting Mills, Inc., supra; N. L. R. B. v. Jones & Laughlin Steel Corp., 331 U.S. 416, 422–423, 67 S.Ct. 1274, 91 L.Ed. 1575 (1947); Allis-Chalmers Mfg. Co. v. N. L. R. B., 162 F.2d 435, 439 (7 Cir. 1947). We think the record indicates that the Board did apply proper reasons in deciding the issue. The courts have often held that although the extent of organization may not be controlling, it may be a factor; e. g., N. L. R. B. v. Quaker City Life Insurance Co., 319 F.2d 690 (4 Cir. 1963), and cases therein cited.

None of the parties in the case have questioned the correctness of the Regional Director's findings of the basic historical facts, nor indeed could they, for the evidence conclusively supports them. The Board's opinion, which is principally directed towards answering the employer's contentions, clearly though impliedly adopts these findings and bases its decision thereon. The Board's decision, which rejects the Director's choice of the larger unit for policy reasons not considered by the Director, is amply supported by the findings of fact made and the reasons relied upon by the Director to support his alternative decision that a unit of the technicals alone would be an appropriate unit.

■ The employer contends that the Board's decision was arbitrarily inconsistent with the decision of the Board in Reynolds Electrical & Engineering Company, Inc., 133 N.L.R.B. 113, 48 L.R.R.M. 1603 (1961). However, Reynolds is factually distinguishable. In Reynolds the employer filed the petition. The Board does not require a showing of interest among the professional employees when the employer files the petition, although it does when the union files the petition. This is not an arbitrary rule as was the one attacked in N. L. R. B. v. Pittsburg Plate Glass Co., 270 F.2d 167 (4 Cir. 1959), Cert. denied, 361 U.S. 943, 80 S.Ct. 407, 4 L.Ed.2d 363 (1960). When a union files a petition limited to a certain group, presumably either the union lacks interest in those excluded, or the extent of organization has not extended far enough to include them. Since these may be factors (although not controlling), and since professional employees generally have interests separate from other employees, it is reasonable for the Board to require a showing of interest among the professionals when it is contended that they be included in the unit. This does not necessarily follow when the employer files the petition. His reasons for excluding or including these employees may be quite different.

As a substantial amount of evidence in the record as a whole exists to support the Board's conclusion, and appropriate legal standards were used, the order of the Board should not be set aside.

Enforced.